IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PAULISA FIELDS, and KAREN TAYLOR, individually and on behalf of all others similarly situated.

Plaintiffs,

v.

WEST MARINE PRODUCTS INC.,

Defendant.
_____/

No. C 13-04916 WHA

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE**

## INTRODUCTION

Former employees brought this putative class action on behalf of themselves and other former employees alleging that employer violated California wage and overtime laws and committed unfair business practices. Employer moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and to strike class allegations under Rule 12(f). For the reasons set forth below, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. The motion to strike is **DENIED WITHOUT PREJUDICE**.

## STATEMENT

West Marine Products, Inc., holds itself out as "the world's largest boating supply retailer" (Amd. Compl. ¶ 6). Plaintiffs Karen Taylor and Paulisa Fields were employed by West Marine at two of its Santa Barbara facilities as hourly employees, Taylor from approximately May 2011 to March 2012, and Fields from approximately February 2012 to June 2013. During a portion of this time, they were each employed as hourly-paid assistant managers.

1    The operations of West Marine's retail business often required hourly employees to be on
2  duty alone. During their employment, each plaintiff was often the only employee at the West
3  Marine facilities at which she worked. Due to the high volume of work and the limited staff
4  available, employees were required to work five or more consecutive hours without a full
5  thirty-minute meal break. Likewise, employees working ten or more consecutive hours did so
6  without being provided a second thirty-minute meal break (*id*. at ¶ 8).

7    According to West Marine's associate handbook, all employees "must take a 10-min[ute]
8  rest break for every four hour shift worked" (Exh. 1 at 20). Accordingly, West Marine's written
9  policy authorized no rest breaks for employees who worked fewer than four hours per shift, and
10 only one rest break for individuals who worked more than six hours, but fewer than eight hours
11 per shift.

12   Plaintiffs allege that they worked shifts between three-and-a-half and four hours in length,
13 and/or shifts between six and eight hours in length. Because West Marine's written policy only
14 authorized rest breaks for every four hours worked, plaintiffs were not authorized to take one or
15 two rest breaks, respectively. Plaintiffs allege that, during the relevant time period, West
16 Marine's written rest-break policy applied to all of its hourly-paid California employees
17 (*id*. at ¶ 12).

18   During the relevant time period, hourly-paid assistant managers were also tasked with
19 closing the West Marine facilities in the evening. The closing procedure required hourly-paid
20 assistant managers to electronically "punch out" from the timekeeping system and go "off-the-
21 clock" to finish their work. These off-the-clock duties included closing and securing the facility
22 and traveling to the bank to make a deposit of the daily receipts. West Marine allegedly failed to
23 compensate hourly-paid assistant managers for this off-the-clock work, instead, crediting them
24 with a flat fifteen-minute "timecard correction," despite the fact that the work routinely took
25 much longer than fifteen minutes to perform. Plaintiffs allege that West Marine never inquired
26 into whether its blanket fifteen-minute timecard-correction policy provided proper compensation
27 to hourly-paid assistant managers. West Marine also never provided plaintiffs with an expense
28 reimbursement for mileage or bus fare needed to travel to the bank in order to make deposits.

2

Because plaintiffs were only compensated for an extra fifteen minutes after closing, West Marine either knew, or should have known, that plaintiffs would need to use a car or take public transportation in order to be properly compensated for their time. Other hourly-paid assistant managers employed by West Marine in California who took longer than fifteen minutes to complete the end-of-day duties are likewise entitled to wages owed (*id.* at ¶¶ 12–18).

Plaintiffs assert seven claims against West Marine on their own behalf: (1) violation of California Labor Code Sections 204, 226.7, 512 for failure to provide meal-and-rest breaks; (2) violation of California Labor Code Section 204 for untimely payment of earned wages; (3) violation of California Labor Code Sections 510 and 1194 for non-payment of overtime; (4) violation of California Labor Code Section 2802 for the failure to reimburse expenses; (5) violation of California Labor Code Section 226 for failure to provide accurate written wage statements; (6) violation of California Labor Code Sections 201, 202, and 203 for the late payment of final wages; and (7) violation of California's Unfair Competition Law. Plaintiff Taylor also seeks to represent several classes of West Marine California employees similarly situated pursuant to Rule 23 and in a federal overtime collective action pursuant to the Fair Labor Standards Act ("FLSA").

West Marine moves to dismiss the first amended complaint pursuant to Rule 12(b)(6) and to strike the class allegations pursuant to Rule 12(f). This order follows full briefing and oral argument.

**ANALYSIS**

**1.     MOTION TO DISMISS.**

    **A.     Rest-Period Violations.**

The Industrial Welfare Commission Wage Order No. 7 requires California employers "to authorize and permit" a ten-minute rest period for every four hours worked or major fraction thereof, so long as the employee has worked more than three-and-a-half hours. Cal. Code Regs. 11070 subd 12(A). The California Labor Code provides that an employer may not "require an employee to work during any meal or rest periods mandated by an applicable order of the Industrial Welfare Commission." Cal. Lab. Code 226.7. Thus, employees working shifts lasting

3

over two hours but under three-and-one-half hours need not be permitted a rest period. Employees are entitled to 10 minutes rest for shifts from three-and-one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more than 10 hours up to 14 hours, and so on. *See Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1029 (2012).

In their operative complaint, plaintiffs allege that West Marine's associate handbook did not authorize employees working less than four, but more than three-and-a-half hours, to take a rest break. Nor did the handbook allow for employees working more than six, but fewer than eight hours, to take a second rest break.

The handbook stated:

**Breaks & Meal Periods**

Every Associate deserves times to recuperate, eat and relax. Rest Breaks and Meal Breaks are your time to ensure you are healthy and focused. All West Marine Associates are required to take Meal and Rest periods.

**Breaks:**

- One 30-minute unpaid Meal Break must be scheduled and taken if the Associate is scheduled to work a shift over six hours.

- A second 30-minute unpaid Meal Break must be scheduled and taken if the Associate is scheduled to work a shift over ten hours.

- Associates must take a 10-min rest break for every four hour shift worked in addition to any Meal Breaks.

**Policy:**

- Associates are required to start their 30-minute uninterrupted Meal Break no later than the fifth hour worked but not so early that the Associate works more than five hours after the Meal Break.

- Associates must be relieved of all active duty and permitted to leave the premises (although they are not required to leave) during their meal periods.

- Hourly/non-exempt Associates must clock out at the beginning of their 30-minute Meal Break and clock in upon the completion of the Meal Break.

- Associates who regularly work a shift of no more than six hours, with manager approval, may waive their meal breaks in CHIPs. The waiver allows an Associate to work up to six hours without taking a Meal Break. See Meal Waiver for details.

4

1
2
- Unlike Meal Breaks, Associates do not need to clock in and out to record the beginning or end of their Rest Breaks.

3
- Rest Breaks cannot be combined with each other or with the Associates' Meal Break.

4
5
Check with your Supervisor for the best time to take breaks. West Marine complies with all Federal and State laws with regard to meal breaks and rest periods.

6 (Amd. Compl. Exh. 1 at 20–21).

7   At the hearing, West Marine's counsel argued that the handbook does not contravene

8 California state law. He focused on the last sentence quoted alone, which he said implied that the

9 handbook official rest-break policy would be adjusted so as to comply with all federal and state

10 laws. There is no evidence, he argued, that the limit of 10-minute breaks for every four hours

11 worked was meant to apply to California hourly-paid associates. Furthermore, counsel argued,

12 the allegations in the complaint are conclusory, so far as the handbook "tells employees to 'check

13 with your Supervisor' with regards to such matters" (Br. 4).

14   This argument is a mere pro-defense spin on the actual words. The handbook

15 unambiguously states that 10-minute rest breaks were to be taken for every four-hour shift

16 worked. Associates were to check with their supervisor regarding "the best time to take breaks"

17 (*id*. at 21). The handbook is plausibly amenable to plaintiff's construction, namely that it was

18 asserting *ipse dixit* that the four-hour handbook policy complied with all state and federal laws

19 and the reference to checking with the supervisor was merely as to timing of the break.

20   Both parties' interpretations of the handbook are plausible. At the pleading stage, with the

21 allegations of the complaint as our only evidence, it is impossible to say which reading is more

22 reasonable. The complaint states, however, that plaintiffs "worked shifts between

23 three-and-a-half hours and four hours in length, and/or shifts between six hours and eight hours in

24 length" and were denied their first and second rest breaks, as required by California law

25 (Amd. Compl. ¶ 12). Taking the allegations in the complaint as true, plaintiffs have properly

26 alleged a claim for rest-period violations under California law.

27   In opposition, West Marine makes several arguments. *First*, West Marine states that

28 plaintiffs "never allege if and when they actually worked such shifts" (Opp. 12). Not so. The

5

operative complaint states, "Plaintiffs Taylor and Fields were employed by Defendant's West Marine facilities in Santa Barbara as hourly employees from approximately May 2011 to March 2012, and from approximately February 2012 to June 2013, respectively" and that during their employment, they "worked shifts between three-and-a-half hours and four hours in length, and/or shifts between six hours and eight hours in length" (Amd. Compl. ¶ 12). In addition, the complaint alleges that, "during the relevant time period, Defendant's written rest-break policy has applied to all of its hourly-paid California employees" and that, during the relevant time period, there were other hourly-paid California employees who "worked shifts between three-and-a-half hours and four hours in length, and/or shifts between six hours and eight hours in length" (*ibid.*).

*Second*, West Marine argues that plaintiffs cite the associate handbook, but do not allege that they ever saw it, let alone read it. Nor do plaintiffs offer any allegations as to what their supervisors told them regarding rest periods (Reply Br. 2). This argument is not availing due to the fact that plaintiffs' claims do not depend upon them having viewed the associate handbook. Rather, if the handbook represented the policy and practice of West Marine, which plaintiffs allege it did (why else would there be a handbook?), they have pled sufficient factual allegations to allow a plausible inference that West Marine violated the law. Furthermore, on a motion to dismiss under Rule 12(b)(6), the factual record is only the complaint, to be construed in plaintiffs' favor. Whether or not plaintiffs' supervisors told them something different than what was in the company's handbook is not within the record. Denials and counter versions of the facts are inadmissible at this stage.

*Third*, West Marine contends that plaintiffs misrepresent the handbook, because it does not state that employees are barred from taking rest breaks if they work shifts of 3.5 to four hours, or six to eight hours. The contents of the handbook are properly referenced in this motion because it was appended as an exhibit to the complaint. The handbook stated, "Associates must take a 10-min rest break for every four hour shift worked in addition to any Meal Breaks" (Amd. Compl. Exh. 1 at 20). For the purposes of the motion to dismiss, we must assume that plaintiffs' inference — that the handbook did not allow for rest breaks for shifts of fewer than four hours — is true. Such a reading of the handbook is plausible, although perhaps evidence will eventually

6

prove up at trial a contrary understanding. Therefore, the text of the handbook does not defeat plaintiffs' allegation.

*Fourth*, West Marine argues that plaintiffs have not provided any factual evidence to show that the handbook even applied to the company's California employees. It argues that, had "Plaintiffs [been] told by their California Supervisors, or in writings posted in their California store, that they may take their rest periods if they work a major fraction of four hours, then the existence of some incomplete document (which does not purport to set forth the California standard) in a desk drawer in Florida (for example) does not state a claim by *these Plaintiffs* that *they* have been denied breaks in their *California* store" (Reply Br. 3) (emphasis in original).

At the motion to dismiss stage, the well-pled allegations in the complaint must be taken as true. Plaintiffs contend that the company's handbook applied to its California employees. (Defendant makes no showing that the handbook appended to the complaint did not in fact apply to California employees.) The same page of the handbook to which West Marine cites also sets out a special rule for California employees in regards to the logging of their work time: "Exempt Associates in CA. will report daily exceptions in four hour increments . . ." (Amd. Compl. Exh. 1 at 21). The fact that the handbook draws an explicit exception for California employees in another section, but does not do so in the relevant section, further substantiates the allegations set forth in the operative complaint. Accordingly, West Marine's motion to dismiss the first claim for relief, as to rest-period violations, is **DENIED**.

This order recognizes that by the time of trial, the evidence may (or may not) show convincingly that the handbook had nothing to do with California employees and that this action has been manufactured out of clever pleading. For now, counsel have pled enough to stay in court.

### B.    Meal-Break Violations.

Plaintiffs claim violation of the California Labor Code Sections 512 and 226.7 as to West Marine's failure to grant meal breaks. Section 512(a) of the Labor Code provides in pertinent part:

7

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

Under Section 512(a), an employer has "an obligation to provide a meal period to its employees." *Brinker Restaurants Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012). This obligation is generally satisfied if the employer "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Ibid.* While the requirements for a claim under Section 512 are straightforward — the employer failed to provide the requisite meal period — a plaintiff cannot state such a claim without any factual allegations supporting the claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Here, plaintiffs allege that (1) West Marine did not offer meal breaks for employees working less than six hours, and (2) they "were often the only employees at the West Marine facilities at which they worked," and that "due to the high volume of work and the limited staff available . . . employees were required to work five or more consecutive hours without a full thirty-minute meal period," or ten or more hours without being provided a second thirty-minute meal period (Amd. Compl. ¶ 8).

In its opposition, West Marine raises many of the same arguments regarding the meal-break claim that it did against the rest-break claim, including: (1) that the associate handbook contains no limiting or preclusive language that would prevent an employee from taking a meal break for a shift of less than six hours; (2) plaintiffs fail to allege they even saw or read the associate handbook; (3) plaintiffs do not plead whether their supervisor gave them instructions different than those in the handbook. For the reasons stated above, these arguments are similarly unavailing here.

8

1    In addition, West Marine argues that even if plaintiffs were the only "hourly-paid
2    employee to be on duty at any given time," there "conspicuously" was "no allegation that a
3    manager was not also on duty who could break them" (Br. 6, *citing* Amd. Compl. ¶ 13). This is
4    incorrect, as was revealed at the hearing wherein counsel and the judge got out the pleading and
5    parsed it. The operative complaint alleges that "[they] themselves were often the *only employees*
6    at the West Marine facilities at which they worked" (*id*. at ¶ 8) (emphasis added). Accordingly,
7    the complaint properly alleges that due to the high volume of work, it was not possible to take a
8    full thirty-minute meal period in accordance with California law.

9    West Marine further contends that an employer only has an obligation to merely provide
10   meal-and-rest periods, not to ensure that the employee actually takes them. *See Kenny v.*
11   *Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008). At most, West Marine argues, plaintiffs
12   allege that they did not take meal breaks, not that West Marine failed to offer them. While it is
13   true that an employee is free to work through a meal break on his or her own volition, that is not
14   what the complaint alleges. Not only did the associate handbook allegedly not provide meal
15   breaks for shifts shorter than six hours, employees were also impeded by the fact that they often
16   worked alone and had no one to run the store had they stopped for a break. There is no allegation
17   of mutual consent as to any waiver of the meal break either. Accepting the factual allegations as
18   true, and realizing that the actual facts may wind up being otherwise, plaintiffs have sufficiently
19   pled the facts necessary to state a claim. Accordingly, West Marine's motion to dismiss the first
20   claim for relief, as to meal-period violations, is **DENIED**.

21                **C.    Timely Payment and Reimbursement of Expenses.**

22   Plaintiffs' second and fifth claims for relief involve certain off-the-clock work performed
23   for West Marine. Plaintiffs allege that as hourly-paid assistant managers, they were tasked with
24   closing the West Marine facilities in the evening, as well as, traveling to the bank to make a
25   deposit of the daily receipts. West Marine, allegedly, failed to compensate hourly-paid assistant
26   managers for this off-the-clock work, instead crediting them with a flat fifteen-minute "timecard
27   correction," despite the fact that "the work routinely took much longer than fifteen minutes to
28   perform" (Amd. Compl. ¶ 14). According to the operative complaint, "[b]ecause Plaintiffs, again,

9

1    only had fifteen minutes to complete their tasks, Defendant knew that [they] would use cars or the
2    bus to travel to the bank" (*id*. at ¶ 15). West Marine had a policy of "never providing expense
3    reimbursement to hourly-paid assistant managers employed in California who had to travel at
4    least half-a-mile for their end-of-day bank runs" (*id*. at ¶ 16).

5    In its opposition, West Marine argues that plaintiffs have failed to allege "that either of
6    them *informed* their employer or Supervisor that they took in excess of 15 minutes to complete
7    the task, and that Defendant thereby suffered and permitted such work, as would be necessary to
8    state a claim" (Br. 8) (emphasis in original). Plaintiffs respond that California law does not
9    require "that an employee was 'suffered or permitted' to work, meaning that one is not required to
10   allege whether Plaintiffs told their supervisor that their bank runs took longer than fifteen
11   minutes" (Opp. 21).

12   Plaintiffs' contention is incorrect. While the phrase "suffered or permitted to work"
13   encompasses something greater than the time the employee actually spends working, under
14   California and federal law, the employer must have some knowledge and control over the
15   employee in order to be liable for compensating the employee's time. In fact, the California
16   Supreme Court decision cited by plaintiffs contained an analysis of this very point. *See Morillion*
17   *v. Royal Packing Co.*, 22 Cal. 4th 575, 584 (2000). *Morillion* held:

> Contrary to the Court of Appeal's interpretation, the phrase "suffered or permitted to work, whether or not required to do so" encompasses a meaning distinct from merely "working." Along with other amici curiae, the California Labor Commissioner notes that the time the employee is suffered or permitted to work, whether or not required to do so can be interpreted as time an employee is working but is not subject to an employer's control. This time can include work such as unauthorized overtime, which the employer has not requested or required. Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. The employer knows or has reason to believe that he is continuing to work and the time is working time. In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. Although our state cases have not interpreted the phrase, federal cases have discussed the meaning of "suffer or permit to work" defining "employ" under the FLSA. The words "suffer" and "permit" as used in the statute mean "*with the knowledge of the employer*." Thus *an employer who knows or should have known* that an employee is or was working overtime must comply with the provisions of [29 U.S.C.] § 207.

10

*Ibid*. (internal citations omitted) (emphasis added).

In regard to West Marine's knowledge of plaintiffs' overtime work, the operative complaint merely states that, "Defendant never inquired into whether its blanket fifteen-minute timecard-correction policy provided proper compensation to hourly-paid assistant managers" (Amd. Compl. ¶ 14). Similarly, plaintiffs' fifth claim, for reimbursement of expenses associated with driving their own cars or riding the bus to the bank, the operative complaint states only that, "Defendant knew that Plaintiffs would use cars or the bus to travel to the bank" (*id*. at ¶ 15). The complaint is devoid of any factual allegations that plaintiffs either informed their supervisors, or that their supervisors knew that they took in excess of 15 minutes to complete the bank transaction, or used a car or bus to get to the bank.

Furthermore, plaintiffs allege that a "time card correction" procedure existed for logging hours worked (*id*. at ¶ 13). Plaintiffs, however, fail to allege whether this system allowed them to declare overtime, or whether they ever brought their off-the-clock work to West Marine's attention in any other manner. In order to satisfy the Rule 8 standard, plaintiffs must plead factual content, not tender naked assertions devoid of further factual enhancement. As such, West Marine's motion to dismiss the second and fifth claims is **GRANTED**.

### D. Non-Payment of Overtime.

The third and fourth claims for relief allege that defendant failed to pay plaintiffs' overtime wages for work in excess of eight hours per day, in violation of California Labor Code Section 510 and the FLSA. Section 510 of the Labor Code states:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

Similarly, the FLSA states:

11

> . . . no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. 207(a)(1).

Under both the California Labor Code and the FLSA, employees who receive less than the proper amount of overtime compensation are entitled to recover the unpaid balance of their overtime compensation. Cal. Lab. Code 1194(a); 29 U.S.C. 216(b). The FLSA also permits employees to recover "an additional equal amount as liquidated damages." 19 U.S.C. 216(b).

The complaint alleges that plaintiffs worked in excess of eight hours per day for forty hours per week "on account of the above-described off-the-clock work, and they are therefore entitled to [] damages" (Amd. Compl. ¶ 17). Similarly, it is alleged that West Marine's other hourly-paid assistant managers who also worked in excess of eight hours per day or forty hours per week are also entitled to damages specified by Section 1194 of the Labor Code and by the FLSA.

In addition, where West Marine's hourly-paid employees earned non-hourly payments on top of their hourly wages, such as earned commissions or bonuses, West Marine failed to factor these payments into their employees' overtime compensation. Both the California Labor Code and the FLSA require that overtime employees be compensated at a rate of no less than one ane one-half times the regular rate of pay. The regular rate of pay must be calculated to include all payments received, including bonuses and commissions. Plaintiffs allegedly earned these non-hourly payments that were not properly factored into their overtime pay "on account of the above described off-the-clock work," as well as other overtime hours worked (*id*. at ¶¶ 17–18).

These are dependent upon plaintiffs' off-the-clock claims, which they failed to properly allege. Even though plaintiffs' claims do not limit themselves to the overtime spent locking up the facilities and making bank runs, the complaint contains no factual allegations as to a single other instance of overtime. Accordingly, the complaint fails to allege sufficient non-conclusory factual content to be plausibly suggestive of a claim entitling the plaintiffs to relief. Accordingly,

12

1   West Marine's motion to dismiss the third and fourth claims for non-payment of overtime is
2   **GRANTED**.

### E.     Pay-Stub Information.

Plaintiffs' sixth claim is for violation of Section 226 of the California Labor Code and is derivative of their other claims. Section 226(a) places a number of requirements on employee pay stubs, including, among other things, a statement of gross wages, total hours, and deductions. Under Section 226(e), "[a]n employee *suffering injury* as a result of a knowing and intentional failure by an employer to comply with [Section 226(a)] is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees" (emphasis added).

The parties disagree, however, on the nature of the injury requirement. West Marine contends that plaintiffs "fail to properly allege . . . [the] element of this claim that they were *injured* as a result of any such violation" (Br. 10) (emphasis in original). West Marine points to a number of decisions holding that the injury requirement of Section 226(e) cannot be satisfied simply if one of the nine itemized requirements of [Section 226(a)] is missing from a wage statement. See *Alonzo v. Maximus, Inc*., 832 F.Supp.2d 1122, 1135 (C.D. Cal. 2011). Instead, "employees must establish an actual injury arising from the receipt of inaccurate paystubs." *Ibid*.

Plaintiffs cite decisions holding that the injury requirement is minimal. This interpretation is reinforced by the 2013 statutory amendment to Section 226 clarifying the injury requirement by providing a statutory definition. Section 226(e) now states that "[a]n employee is deemed to suffer injury . . . if the employer fails to provide accurate and complete information as required by one or more of [the section (a) requirements] and if the employee cannot promptly and easily determine from the wage statement alone . . . (i) The amount of gross wages or net wages . . . (ii) Which deductions the employer made from gross wages to determine the net wages . . . ." Because West Marine allegedly failed to provide accurate pay-stub information as to the

13

employees' rest-periods and meal-periods in violation of Section 226(a), plaintiffs have satisfied the requirements of Rule 8. Accordingly, West Marine's motion to dismiss is **DENIED**.

### F. Continuing Wages.

In plaintiffs' seventh claim for relief, they allege that West Marine is liable under Sections 201, 202, and 203 of the California Labor Code for waiting-time penalties. Under Sections 201and 202, if an employee quits or is fired, any wages earned must be turned over within a matter of days. Under Section 203, if an employer "*willfully* fails to pay" former employees within the time limits set by Sections 201 or 202, then "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," up to a maximum of thirty days (emphasis added). This claim is derivative of the money alleged owed from the other claims in this action.

West Marine counters that plaintiffs cannot plausibly allege that any nonpayment was willful, which would preclude waiting time penalties under Section 203. This matter, however, is not appropriate for resolution at the motion to dismiss stage. Viewing the factual allegations in the light most favorable to plaintiffs and drawing all reasonable inferences in their favor, as must be done in ruling on a motion to dismiss, this order holds that plaintiffs can potentially support a finding of willfulness. Therefore, West Marine's motion to dismiss the seventh claim based on plaintiffs' inability to prove willful conduct is **DENIED**.

### G. Unfair Competition Law.

Plaintiffs' final derivative claim involves alleged violations of Section 17200 of the California Business and Professions Code ("UCL"). The UCL bans "unlawful, unfair or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code 17200. The unlawful prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). If applied to wage-and-hour claims, the UCL would expand the statute of limitations from three to four years. *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 289 (2010). West Marine's sole contention is that this claim is entirely derivative of plaintiffs' other claims and therefore should be dismissed. Because this order finds

14

1  merit in plaintiffs' rest-and-meal break claims, West Marine's motion to dismiss the unfair
2  competition claim is similarly **DENIED**.  (This order does not (yet) bless the idea that the statutory
3  deadline of three years can be obliterated by merely adding a UCL claim.)

### 2. GENERAL CLASS ALLEGATIONS.

Apart from plaintiffs' underlying claims, West Marine requests that plaintiff Taylor's class allegations be stricken for failure to plead satisfaction of Rule 23 (Br. 12).  Pursuant to Rule 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.  *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

While West Marine correctly asserts that class allegations may be stricken at the pleading stage, such motions "are disfavored because a motion for class certification is a more appropriate vehicle" for argument about class propriety.  *Thorpe v. Abbott Labs., Inc.*, 534 F.Supp.2d 1120, 1125 (N.D. Cal. 2008) (Judge Ronald M. Whyte).  The motion to strike plaintiffs' class allegations is **DENIED WITHOUT PREJUDICE** as to West Marine's ability to move to strike the class allegations if and when class certification is sought.

### CONCLUSION

As discussed above, West Marine's motion to dismiss (1) the timely payment of earned wages, (2) the reimbursement of expenses, and (3) the two non-payment of overtime claims is **GRANTED**.  Plaintiffs may seek to amend the complaint and will have until **FEBRUARY 27 AT NOON** to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint.  Plaintiffs must append to their motion a proposed amended complaint.  The motion should clearly explain how the amendments to the complaint cure the defects identified herein.  The motion to dismiss claims for (4) rest-period violations, (5) meal-break violations, (6) pay stubs information, (7) continuing wages, (8) and unfair competition are **DENIED**.

15

West Marine's motion to strike plaintiff Taylor's class allegations is **DENIED WITHOUT PREJUDICE** to refiling at the class certification stage.

**IT IS SO ORDERED.**

Dated: February 7, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE