IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KAREN TAYLOR, individually and on behalf of all others similarly situated, and PAULISA FIELDS,

Plaintiffs,

v.

WEST MARINE PRODUCTS, INC.,

Defendant.

No. C 13-04916 WHA

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND STRIKING CERTAIN ALLEGATIONS FROM COMPLAINT**

## INTRODUCTION

Former employees bring this putative class action on behalf of themselves and other former employees alleging that employer violated California wage and overtime laws and committed unfair business practices. Employer moves to dismiss the third amended complaint under Federal Rules of Civil Procedure 12(b)(6). The motion to dismiss is **DENIED**.

## STATEMENT

The background of this action is set forth in a prior order (Dkt. No. 41). In brief, defendant West Marine Products, Inc., is a boating supply retailer. Plaintiffs are Karen Taylor and Paulisa Fields, two former employees of West Marine. Among other things, plaintiffs claim that West Marine failed to provide its employees with sufficient breaks at work and adequate compensation for off-the-clock tasks, thereby committing unfair business practices and violations of California wage and overtime laws.

On October 23, 2013, plaintiffs commenced this action, filing a first amended complaint nearly two months later. On February 7, 2014, an order dismissed plaintiffs' claims for (1) the timely payment of earned wages, (2) the reimbursement of expenses, and (3) two non-payment of overtime claims. Plaintiffs' claims for meal-and rest-period violations, failure to provide information on pay stubs, continuing wages, and unfair competition survived the motion. Plaintiffs were given until February 27 to file a motion for leave to amend the complaint.

On March 6, both sides stipulated to a second amended complaint so long as (1) the second amended complaint would omit plaintiffs' proposed new claim under the California Labor Code Private Attorneys General Act ("PAGA"), Cal. Lab. Code Section 2698 *et seq.*; and (2) West Marine could file a Rule 12 motion as to the other claims alleged in the second amended complaint, within ten days of the stipulation's approval.

On March 14, West Marine filed the current motion to dismiss the second amended complaint. The motion challenges several claims, including: (1) California Labor Code Section 204 for the timely payment of earned wages; (2) California Labor Code Sections 510 and 1194 for the non-payment of overtime; (3) Title 29 of the United States Code Sections 207 and 216 for the non-payment of overtime; and (4) California Labor Code Section 2802 for reimbursement of expenses.

Following West Marine's motion to dismiss, plaintiffs moved for leave to file a third amended complaint, seeking one change: the addition of a PAGA claim.

The motion was granted in part and denied in part. Critically, that order stated:

> [West Marine]'s motion to dismiss will still proceed on May 1. Although directed at dismissing claims 2, 3, 4 and 5 from the second amended complaint, [West Marine]'s motion will be construed as challenging the same claims under the third amended complaint, *given that those claims remain unchanged from the second amended complaint. . . .* Please note that there will be no more motions to amend after March 31, 2014, absent a showing of good cause under Rule 16.

(Dkt. No. 57) (emphasis added).

On March 28, plaintiffs filed their third amended complaint and their opposition to West Marine's motion to dismiss. The third amended complaint not only added a PAGA claim, but, in

2

contravention of the Court's order, added new factual allegations (and two exhibits) intended to bolster their other claims that were the subject of West Marine's pending motion to dismiss (Dkt. No. 59, Exhs. 5, 6). These additional allegations included:

> A copy of Defendant's documents detailing the off-the-clock duties is attached hereto as Exhibit 5 and Exhibit 6.

> \* \* \*

> This off-the-clock work was further extended because customers often lingered in the store after closing time, preventing Plaintiffs from commencing the bulk of their off-the-clock duties until customers left the store.

> \* \* \*

> Ultimately, after requests directed to Defendant's managers, Plaintiff Fields was granted modest extensions to the fifteen-minute allotment, but the extensions were insufficient to fully compensate her for the time worked, and no effort was made to pay her at all for the work done prior to the institution of the extensions. Defendant's managers made it clear that Plaintiffs would not be compensated for any off-the-clock work in excess of the allotted time, no matter how long the off-the-clock duties took to complete. Further, Defendant's managers made it clear that Plaintiffs would not be paid for any time recorded on the timecard correction sheet in excess of the allotted time, no matter how long the off-the-clock duties took to compete. Therefore, Plaintiffs had no adequate system in place to allow them to secure compensation for the additional time spent in their off-the-clock closing duties in excess of the allotted time.

> \* \* \*

> Plaintiff Fields specifically requested reimbursement of her bus fare expense, and it was denied. She was instructed to walk to the bank. Defendant never reimbursed Plaintiffs for any bus fare or other expenses incurred in connection with the bank trips. Because Plaintiffs, again, only had fifteen minutes to complete their tasks, Defendant knew that Plaintiffs and class members would use personal vehicles or the bus to travel to the bank.

(Third Amd. Compl. ¶¶ 14, 15).

Following the filing of the third amended complaint, West Marine's counsel emailed plaintiffs' counsel accusing him of an "improper attempt at a slight-of-hand [sic] with the Court and your adversary" (Dkt. No. 63). West Marine's counsel demanded that plaintiffs "file a document striking and withdrawing all references in [plaintiffs'] opposition to [West Marine's] motion to dismiss [] to the new allegations found in [the third amended complaint] that do not also appear in [the second amended complaint]" (*ibid.*). Plaintiffs refused to strike such material, arguing that "[a]ll of the 'changes' between the Second Amended Complaint [] and the Third Amended Complaint [] merely add[ed] additional factual detail, directly supporting the PAGA claim for relief," and that, "[n]one of the language in amendments alter[ed] the substantive allegations" (*ibid.*).

West Marine subsequently filed its reply addressing only those allegations made in the second amended complaint and not the new allegations added to the third amended complaint. A hearing was then held.

**ANALYSIS**

**1.  NEW ALLEGATIONS.**

As an initial matter, this order holds that the additional factual allegations made in the third amended complaint are improper and must be stricken. Plaintiffs never moved to add new factual allegations to their complaint, and leave was never granted for that purpose. Plaintiffs added the new allegations after West Marine had already filed its motion to dismiss the second amended complaint. Furthermore, leave to file a third amended complaint was granted on the condition that claims 2, 3, 4 and 5 "remain unchanged from the second amended complaint" (Dkt. No. 57). When plaintiffs filed the third amended complaint on March 28, time remained for plaintiffs to move to amend the complaint to include these new factual allegations under Rule 15. Plaintiffs, however, instead used the amendment opportunity to review West Marine's motion to dismiss and then write around it in their third amended complaint. This was improper and the amendments are therefore stricken. Accordingly, all references to the "third amended complaint" in this order will be to claims 2, 3, 4 and 5 as they were pled in the second amended complaint.

4

If plaintiffs believe that good cause exists for amending the complaint under Rule 16, they are free to file such a motion. Given that plaintiffs have already made three amendments to their complaint, plaintiffs will bear the burden of demonstrating why the amendments could not have been made before the deadline for amended pleadings expired.

### 2. MOTION TO DISMISS THE THIRD AMENDED COMPLAINT.

Notwithstanding elimination of the improperly added material, there are plenty of other facts pled and the remainder of this order assesses whether those facts state claims.

#### A. Timely Payment of Earned Wages.

West Marine moves to dismiss plaintiffs' claim for the non-payment of wages under California Labor Code Section 204. Plaintiffs allege that as hourly-paid assistant managers, they were tasked with closing the West Marine facilities in the evening, as well as, traveling "more than a mile from the West Marine facilities at which [p]laintiffs were employed," to the bank to make deposits of the daily receipts (Third Amd. Compl. ¶ 15). West Marine, allegedly, failed to compensate hourly-paid assistant mangers for this off-the-clock work, instead crediting them with a flat fifteen-minute "timecard correction," "despite the fact that it took them longer than fifteen minutes to compete their duties" (*id.* at ¶ 14). New, unstricken allegations in the operative complaint state:

> Defendant knew that Plaintiffs and Members of the Off-the-Clock Class were not being compensated for time actually worked, but Defendant did not reimburse them or compensate them for time actually worked.
>
> \*      \*      \*
>
> In fact, when Plaintiff Fields and other employees informed managers that the blanket fifteen-minute timecard correction policy did not compensate them for actual time worked, managers dismissed and ignored their concerns and complaints.

(*id.* at ¶¶ 35, 14).

This order holds that plaintiffs state a valid claim for the non-payment of wages. The February 7 order dismissed plaintiffs' wage claim because it failed to allege that plaintiffs informed their managers that the off-the-clock work took in excess of fifteen minutes. This

5

deficiency has been rectified. Plaintiffs explicitly allege that West Marine knew that employees working off-the-clock were not properly being compensated. Furthermore, common sense dictates that locking up the store and traveling "more than a mile" to make bank deposits might well take longer than fifteen minutes. The allegations pled meet the plausibility test. The question of whether plaintiffs actually informed their managers that they were being forced to work in excess of fifteen minutes off-the-clock goes to the merits of the claim and is not properly addressed on this motion.

West Marine raises several arguments for why this claim should be dismissed. *First*, West Marine contends that the allegations of the complaint are merely "formulaic recitation of the elements of the cause of action" (Br. 4). Not so. As described above, plaintiffs have properly pled the elements of the claim and supported them with specific factual allegations.

*Second*, West Marine contends that plaintiff Taylor should be dismissed because only "plaintiff Fields and other employees" are alleged to have informed managers that the fifteen-minute timecard correction was not long enough to compensate them for their actual time worked.

Regardless of whether plaintiff Taylor is alleged to have informed her manager, the complaint states a valid claim because it alleges that West Marine *knew* that plaintiff Taylor's off-the-clock duties took in excess of fifteen minutes. In addition, whether plaintiff Taylor was one of the "other employees" who went further and directly informed her manager is a dispute for the jury. Accordingly, the claim will not be dismissed as to plaintiff Taylor.

*Third*, West Marine argues that plaintiffs failed to "follow the written policy attached to [the complaint] requiring [them] to 'manually or electronically make a written record of hours worked'" (Br. 4). This argument falls outside the pleadings. The employee handbook does not directly address the issue other than to say, "[a]ll non-exempt Associates must either manually or electronically make a daily record of hours worked which is submitted to their Supervisor" (Third Amd. Compl. Exh. 1 at 21). Whether plaintiffs should have, or could have, made records of time worked off-the-clock is a dispute for trial or summary judgment.

*Fourth*, at the hearing, defense counsel argued that the "amended complaint is unchanged" and that the Court would be "contradicting [its] prior ruling in this case" if it were to allow the claim:

> [Defense Counsel]: The Court would be — and the courts are allowed to do this. You'd be contradicting your prior ruling in this case . . .
>
> The Court: There was no prior ruling. There was no prior allegation about knowledge.
>
> [Defense Counsel]: Yes, there was. It's just recasting exactly as they did before. They said they knew. They just added another allegation saying they knew.

This statement by defense counsel was flat-out wrong. The prior non-payment of wages claim was expressly dismissed because, "[t]he complaint is devoid of any factual allegations that plaintiffs either informed their supervisors, or that their supervisors knew that they took in excess of 15 minutes . . ." (Dkt. No. 41). Specifically, the first amended complaint merely stated that "[West Marine] never inquired into whether its blanket fifteen-minute timecard-correction policy," provided proper compensation. In sharp contrast, the third amended complaint now states that plaintiff Fields and other employees "informed managers" of the fact. The Court is disappointed that counsel would so mangle the record. West Marine's motion to dismiss the non-payment of wages is **DENIED**.

### B.   Non-Payment of Overtime.

Plaintiffs' second and third claims for relief allege non-payment of overtime under California and federal law, respectively. Plaintiffs advance two distinct theories of overtime violations. *First*, plaintiffs seek overtime for the time spent making off-the-clock bank runs. *Second*, plaintiffs allege an overtime theory based, not on hours that went untreated as overtime, but, rather, on the amount of pay offered for hours that *were* correctly acknowledged to be overtime.

#### (1)   *Off-the-Clock Overtime.*

The FLSA requires employers to pay their employees one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week.

7

1    29 U.S.C. 207(a).  California law, likewise, requires employers to pay their employees time and
2    one-half for work exceeding forty hours per week.  Cal. Lab. Code 510(a).
3        The third amended complaint alleges that "Plaintiffs themselves worked in excess of eight
4    hours per day or forty hours per week on account of the above described off-the-clock work"
5    (Third Amd. Compl. ¶ 17).
6        Plaintiffs' overtime claims had previously been dismissed because they were dependent
7    on plaintiffs' off-the-clock claims, which were also dismissed.  Contrary to West Marine's
8    contention, this order finds that the revival of plaintiffs' off-the-clock claims has also revived
9    their claims for overtime hours worked.  Accordingly, West Marine's motion to dismiss is
10   **DENIED**.

### *(2)    Overtime Calculated Without Commissions.*

12   The operative complaint alleges that plaintiffs are entitled to recover additional overtime
13   compensation under California Labor Code Sections 510 and 1194 and the FLSA because, in
14   those instances in which plaintiffs earned non-hourly payments ("spiffs") on top of their hourly
15   wages, West Marine miscomputed their respective overtime rates (Third Amd. Compl. ¶ 18).
16   Specifically, the complaint alleges that plaintiffs were "not paid *any* overtime for [their] Spiffs"
17   (*id*. at ¶ 19) (emphasis added).
18       West Marine moves to dismiss arguing that it is necessary for plaintiffs to go further and
19   allege that the spiffs were earned during the *same calendar week* that overtime was incurred (Br.
20   6).  Plaintiffs respond that because they were paid biweekly, they cannot determine whether the
21   spiffs were earned the same week as the overtime and that the dispute is, nevertheless,
22   "immaterial" because West Marine completely failed "to include the earned commissions in the
23   regular rate," period.
24       It is unnecessary to reach the same-week legal question.  Regardless of whether
25   commissions must be included on a weekly basis versus a biweekly basis, the operative complaint
26   alleges that plaintiffs' overtime compensation was miscalculated because it did not include the
27   spiffs *at all*.  Plaintiffs' counsel stated at the hearing:
28          The Court:  I thought your theory was that the
                employer was cheating the employees by ignoring

United States District Court
For the Northern District of California

8

> completely commissions and not rolling them in at all.
>
> [Plaintiffs' Counsel]: Correct.
>
> \* \* \*
>
> The Court: Wait. Wait. I want to make sure — is that your theory?
>
> [Plaintiffs' Counsel]: Yes, Your Honor, that is correct.
>
> The Court: Let's say for the first two weeks — you've got the first two weeks of the month. Week No. 1, the employee gets a hundred dollar commission. All right? Week No. 2, they get a 300-dollar commission. Okay? And both weeks, they — on Friday, they work an extra hour. . . . you're telling me that none of those commissions get rolled into the base for purposes of the overtime?
>
> [Plaintiffs' Counsel]: Correct, Your Honor.

The issue of whether spiffs and overtime must occur within the same workweek or the same pay period can be briefed and addressed on a later motion for summary judgment. Accordingly, plaintiffs have properly alleged an overtime claim pursuant to state and federal law. West Marine's motion to dismiss claims three and four is **DENIED**.

### C.   Reimbursement of Expenses.

The operative complaint states that plaintiffs, in their capacity as hourly-paid assistant managers, "would make end-of-day bank runs" to banks "located more than a mile from the West Marine facilities at which [they] were employed" (Third Amd. Compl. ¶ 15). Because of the distance, "the minimal fifteen-minute timecard-correction window" for assistant managers to complete their end of the day tasks "required [plaintiffs] either to use a personal automobile or to take the bus in order to travel to the banks" (*ibid.*). West Marine, though, "never provided [plaintiffs] with any mileage reimbursements" and "never reimbursed them for any bus fare" (*ibid.*). Plaintiffs amended this claim to include the following sentence: "Defendant knew and was informed that Plaintiffs and Off-the-Clock Members traveled to the bank by bus, or car" (*id.* at ¶ 46).

California Labor Code Section 2802 states in pertinent part:

9

> (a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer . . .

West Marine moves to dismiss this claim, arguing that plaintiffs have not alleged that their employer knew of the driving or bus fare expenses (Br. 8). Not so. The complaint explicitly states that West Marine knew that plaintiffs traveled to the bank by car or bus. Considering that the banks referenced in the complaint were "more than a mile" away from the West Marine facilities at which plaintiffs worked, it is reasonably alleged that plaintiffs were forced to use some mode of transportation other than walking.

West Marine also argues that the company's written policy requires plaintiffs to report "travel expense":

> <u>Reimbursable Travel Expenses</u>
>
> If, at the Company's request, you travel for Company business, you will be compensated for mileage and other expenses as allowed by policy. Generally, receipts will be required for business-related travel expenses.

(Third Amd. Compl. Exh. 1 at 21). West Marine argues that plaintiffs have failed to allege that they satisfied the reimbursement protocol which is attached to their complaint. This order disagrees. When read in a light most favorable to plaintiffs, the travel reimbursement provision simply stated that employees "will be compensated for mileage and other expenses . . ." (*ibid*.). Plaintiffs allege that West Marine knew of their expenses and failed to compensate them. Accordingly, plaintiffs have stated a valid claim. The question of whether or not plaintiffs followed the proper procedure or actually notified supervisors of their travel expenses are not questions to be answered on a motion to dismiss. Accordingly, West Marine's motion to dismiss the fifth claim for relief, reimbursement of expenses, is **DENIED**.

10

**CONCLUSION**

As discussed above, West Marine's motion to dismiss is **DENIED**. The allegations improperly added to the third amended complaint shall be **STRICKEN**. There will be no more Rule 12 motions. Counsel should be cooperating to get this case ready for trial and Rule 23 proceedings.

**IT IS SO ORDERED.**

Dated: May 3, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE