1

2

3

4

5

6

IN THE UNITED STATES DISTRICT COURT

7

FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10

KAREN TAYLOR, individually and on
behalf of all others similarly situated, and

11

PAULISA FIELDS,

No. C 13-04916 WHA

12

Plaintiffs,

13

v.

14

WEST MARINE PRODUCTS, INC.,

**ORDER RE PARTIAL
SUMMARY JUDGMENT
AND CLASS CERTIFICATION**

15

16

Defendant.

17

_____/

18

**INTRODUCTION**

19

In this putative class action alleging wage-and-overtime violations, defendant moves for

20

partial summary judgment, and one plaintiff moves for class certification.  To the extent stated,

21

summary judgment is **GRANTED IN PART AND DENIED IN PART**.  Moreover, the class-

22

certification motion is **GRANTED IN PART AND DENIED IN PART**.

23

**STATEMENT**

24

Defendant West Marine Products, Inc. is a national boating-supply retailer.  Plaintiffs

25

Karen Taylor and Paulisa Fields are two former hourly employees who worked for West Marine

26

at its Santa Barbara facilities — from May 2011 to March 2012, and February 2012 to June

27

2013, respectively.

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1      This action began on October 23, 2013.  Following several amendments, the third

2   amended complaint now asserts nine claims against West Marine, for:  (1) failing to provide

3   employees with sufficient rest-and-meal breaks, in violation of Sections 204, 226.7, and 512 of

4   the California Labor Code; (2) failing to timely pay earned wages for employees' off-the-clock

5   work, in violation of Section 204 of the California Labor Code; (3) miscalculating and failing to

6   pay overtime for employees' off-the-clock work and non-hourly bonuses called "spiffs," in

7   violation of Section 510 of the California Labor Code; (4) miscalculating and failing to pay

8   overtime for employees' off-the-clock work and "spiffs," in violation of Sections 207 and 216 of

9   the Fair Labor Standards Act; (5) failing to reimburse employees for off-the-clock work

10  expenses, in violation of Section 2802 of the California Labor Code; (6) providing employees

11  with inaccurate written wage statements, in violation of Section 226 of the California Labor

12  Code; (7) continuing wages for former employees, under Sections 201, 202, and 203 of the

13  California Labor Code; (8) engaging in unfair and unlawful business practices, in violation of

14  Section 17200 of the California Business and Professions Code; and (9) civil penalties and

15  attorney's fees under the Labor Code Private Attorney General Act.

16      Fields brings the above claims in her individual capacity only.  Taylor, on the other hand,

17  has moved to certify five California classes of hourly West Marine employees.  On top of that,

18  West Marine has moved for partial summary judgment, and both sides submit numerous

19  evidentiary objections with respect to summary judgment and class certification.  In addition,

20  West Marine seeks judicial notice of deposition testimony given by Taylor's expert in an

21  unrelated action.  This order follows full briefing and oral argument, in addition to a follow-on

22  evidentiary hearing with two witnesses and supplemental briefing.

23

24

25

26

27

28

United States District Court
For the Northern District of California

**ANALYSIS**

**1. MOTION FOR PARTIAL SUMMARY JUDGMENT.**

West Marine seeks partial summary judgment against Claims One, Three, Four, Six, and Nine*, but only as brought by Taylor. In turn, Taylor opposes with evidentiary objections to several of West Marine's exhibits. Because this order need not rely on the disputed exhibits to make its rulings, those evidentiary objections are **DENIED AS MOOT.**

**A.      Claim One — Rest-and-Meal-Break Violations.**

*(1)      Meal Breaks.*

With some exceptions not applicable here, Section 512(a) of the California Labor Code states that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Section 512(a) goes on to provide that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . . ."

In *Brinker Restaurant Corporation v. Superior Court*, 53 Cal. 4th 1004, 1040–4 (2012), the California Supreme Court held that an employer satisfies its meal-break duty where it provides a reasonable opportunity for proper meal breaks, and "does not impede or discourage" employees from taking such breaks. But "[p]roof an employer had knowledge of employees working through meal periods will not alone subject the employer to liability for premium pay." *Brinker* also concluded that "absent waiver, [S]ection 512 requires a first meal period no later than the end of an employee's fifth hour of work, and a second meal period no later than the end of an employee's 10th hour of work." *Ibid.*

Here, Taylor alleges under Claim One that West Marine failed to provide a thirty-minute meal break for employees working five or more hours, and failed to provide a second meal break for employees working ten or more hours. West Marine argues that there is no evidence that it impeded or discouraged Taylor from taking meal breaks.

---

* Although West Marine refers to the PAGA claim as "Claim Eight," it is in fact "Claim Nine" in the operative complaint (Dkt. No. 76).

**United States District Court**
For the Northern District of California

1    This order disagrees with West Marine.  As a preliminary matter, the company's

2    Associate Handbook, March 2009 memo, and May 2011 memo all state that meal breaks "must"

3    be scheduled if an employee works *more than six hours.*  This is off by one hour under

4    California law.  Furthermore, Taylor has submitted employment data showing that she missed

5    eight meal breaks, each time while working a shift of more than five hours (Harris Decl. ¶ 16;

6    Exh. 11).  While this alone would not necessarily show that the company discouraged meal

7    breaks, Taylor testified that Pfarr told her, on occasion, to go later for meal breaks when the store

8    was too busy, and further testified that there would be no opportunity to take those breaks later

9    on (Harris Exh. 10 at 108:19–109:3; 285:1–10) (emphasis added).  Moreover, Taylor testified

10   that she saw Pfarr manipulate computer records, so that it would appear as if employees had

11   taken their full meal breaks (when they had not) (*id.* at 196:16–24; 202:2–10).  Perhaps this is

12   fanciful but the judge must credit it at summary-judgment time.

13   Viewing this evidence most favorably to Taylor, this order finds triable issues of fact.

14   Accordingly, as to the meal-break allegations under Claim One, summary judgment is **DENIED**.

15   However, please note with this denial of summary judgment (and any denial of summary

16   judgment discussed below) that plaintiffs' trial evidence may not measure up to the lawyer-

17   prepared declarations used to oppose summary judgment.  If so, it is conceivable that a Rule 50

18   motion for judgment as a matter of law may be in order at the end of plaintiffs' case at trial.

19                              *(2)     Rest Breaks.*

20   This order now applies *Brinker*'s logic to the problem of rest breaks.  Under Claim One,

21   Taylor also contends that West Marine failed to authorize a *first* ten-minute rest break for

22   employees working more than three-and-a-half hours but fewer than four hours, and failed to

23   authorize a *second* rest break for employees working more than six hours but fewer than eight

24   hours.

25   Section 11070 of the applicable Industrial Welfare Commission Wage Order mandates an

26   initial ten-minute rest break for employees who have worked three-and-a-half hours (emphasis

27   added):

28

4

12.  Rest Periods

(A) Every employer shall *authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period*.  The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours *or major fraction thereof.  However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours*.  Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

Cal. Code Regs. tit. 8, 11070.  Employees are also entitled to a second ten-minute rest break for shifts of six to ten hours.  *See Brinker*, 53 Cal. 4th at 1029.

This is what the record shows.  At the evidentiary hearing, Taylor admitted that it was a "fair summary" to conclude that she "always took [her] first rest break," and that she "typically" did take the first rest break on schedule (Dkt. No. 109 at 42:20–43:10).  Indeed, Taylor testified at her deposition that when she began working at West Marine, she received some of her initial training and orientation from her direct supervisor, Nanci Pfarr.  Part of this training covered HR protocols, such as meal-and-rest-breaks (among other subjects), and it was at that time that Pfarr instructed Taylor about taking the first rest break by the third or fourth hour of work.  Also at that point, Pfarr told Taylor that she should take the first rest break "approximately two hours into the shift" (Kemple Exh. A at 78:22–80:25) (emphasis added):

A.    That we were to take them — I would say, you know, by the third hour, fourth hour.  Fourth hour, excuse me.

Q.    That you were to take them by the third or fourth hour?

A.    *But generally it was two hours in.*

Q.    Okay.

A.    Because then the meal break would start.

Q.    *So she said something about three and four hours but she also said that you should take them approximately two hours into the shift, the rest breaks.  Correct?*

A.    *Yes.*

Given Taylor's concessions from her testimony above, summary judgment against the *first* rest-break claim is **GRANTED**.

5

United States District Court

For the Northern District of California

But the analysis must differ for Taylor's claim regarding the *second* rest break. At her deposition, Taylor testified how she understood that West Marine "authorized" two rest breaks if she worked a six-to-eight-hour shift (*id.* 180:7–15). One problem here is that the record does not indicate in what part of Taylor's employment tenure she understood this. So far as the record shows, Taylor may have only understood it near the end of her employment, and not at the beginning.

Moreover, even if it appears that Taylor was properly informed about the second rest break, this order finds a genuine issue of material fact as to whether she was impeded or discouraged from taking that later break. *Brinker*, 53 Cal. 4th at 1040. In particular, Taylor declares in support of her motion for class certification that she understood West Marine's policy to permit only one rest break when she was scheduled to work fewer than eight hours. Taylor also testified at the evidentiary hearing that "at least once a week," she worked more than six hours a day without a second rest break, and on those occasions, the store was too busy such that Pfarr asked Taylor to wait on taking a break (and the store would continue to be too busy for any second rest break at all) (Taylor Decl. ¶ 3; Dkt. No. 109 at 9:2–10:25). From this, a reasonable jury could conclude that the store was managed in such a way so as to prevent Taylor from taking her second rest break, at least on some occasions. Summary judgment for the employer on the *second* rest-break claim must therefore be **DENIED**.

In that connection, this order rejects West Marine's further argument that Taylor is limited to her answer to an interrogatory and that the Court must ignore all other evidence tendered on this motion.

### B.    Claims Three and Four — Overtime Miscalculations of "Spiffs."

Under Claim Three, Taylor asserts that West Marine violated Section 510 of the California Labor Code by miscalculating overtime pay in two ways: *first*, by not counting employees' off-the-clock work; and *second*, by excluding "spiffs" from calculations of employees' "regular rate of pay" for overtime hours. Generally, "spiffs" are non-hourly bonuses that employees can earn when they sell a particular product (Simkins I Decl. ¶ 8). Claim Four also presents the same overtime allegations, but under the FLSA. West Marine now requests

6

1    summary judgment against the spiff portion of Claims Three and Four (and not the off-the-clock

2    part).

3                    **(1)      *Spiff-Overtime FLSA Claim (Claim Four).***

4          The FLSA compels overtime compensation for "employees who work more than forty

5    hours in a workweek" — at one and one-half times the "regular rate of pay."  29 U.S.C. 207(a);

6    *see also Haro v. City of Los Angeles*, 745 F.3d 1249, 1253 (9th Cir. 2014).  The "regular rate of

7    pay," in turn, is calculated by dividing an employee's "total remuneration for employment

8    (except statutory exclusions) *in any workweek* by the total number of hours actually worked by

9    him *in that workweek* for which such compensation was paid."  29 C.F.R. 778.109 (emphasis

10   added).  Because "the regular rate is merely a rate on which the overtime premium, if any, is

11   based," an employer "need determine an employee's 'regular rate of pay' *only for workweeks in*

12   *which the employee performs overtime work and is therefore entitled to overtime pay benefits*."

13   Simmons, Wage and Hour Manual for Cal. Employers (17th ed. 2014) 8.12, p. 324 (emphasis

14   added).

15         West Marine argues that Taylor cannot increase her "regular rate of pay" by adding spiffs

16   to her "total renumeration for employment," because she never earned a spiff during any

17   overtime workweek under the FLSA.  This order agrees.  The company's records show that

18   Taylor only earned spiffs in workweeks of fewer than forty hours, and there is no evidence to the

19   contrary (Simkins I Decl. ¶ 12).

20         Taylor nonetheless claims that it is not necessary to establish that the earned overtime

21   and earned spiffs occurred in the same workweek.  That is inaccurate, given the language of

22   Section 778.109 of the Code of Federal Regulations.  Indeed, Taylor has cited no authorities that

23   would support her position.  She suggests, however, that Claim Four is saved by Section 778.120

24   of the Code of Federal Regulations, which states:

25              If it is not possible or practicable to allocate the commission
                among the workweeks of the period in proportion to the amount
26              of commission actually earned or reasonably presumed to be
                earned each week, some other reasonable and equitable method
27              must be adopted.

28

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

1    Taylor next contends that "[c]learly, [d]efendant did not previously identify which commissions

2    were earned during which particular workweek" because the company's senior payroll manager

3    has declared (Simkins I Decl. ¶ 14) (emphasis added):

4              In March 2013, West Marine switched to a system by which it
               grossed up [s]piffs and bonuses into overtime on a [two-week]
5              pay period basis. *It did so because calculating the overtime due
               on a weekly basis each pay period would prove to be too
6              logistically difficult for the payroll department.*

7    In Taylor's view, this declaration constitutes an implicit admission that "West Marine had

8    systematically deprived its employees of all earned overtime during pay periods in which they

9    had earned a [spiff], bonus or prize" (Opp. 15).

10         This is a smokescreen. Taylor has not presented evidence that it was impossible or

11   impracticable to allocate spiffs among her workweeks, so as to avail herself to the benefit of

12   Section 778.120. *To the contrary, the company's records already list her spiffs and the exact

13   workweeks in which they were awarded* (Simkins I Decl. ¶ 12). Nor has Taylor provided any

14   evidence that West Marine failed to "previously identify which commissions were earned during

15   which particular workweek," as she now claims. Furthermore, other than her argument now,

16   there is nothing in the record to support Taylor's position that West Marine systematically

17   deprived its employees of all spiffs before March 2013.

18         Finally, Taylor requests "an opportunity to conduct discovery and present further

19   evidence in opposition to the [motion for partial summary judgment]" (Opp. 16). The answer is

20   no. Both sides have had time to conduct discovery since January 2014, and since the filing of

21   the motion for partial summary judgment on July 24, 2014. Furthermore, Rule 56(d) requires

22   Taylor to show, by affidavit or declaration, "the specified reasons" for why she cannot present

23   facts essential to justify her opposition. At most, her counsel submit a declaration that Taylor

24   "should be entitled to review" documents relied upon by West Marine's senior payroll manager,

25   and that Taylor "would review all documents involved in the changes in West Marine policies

26   regarding breaks and computation of overtime wages when [s]piffs, bonuses or prizes are

27   involved" (Harris Decl. ¶ 19). That is not enough to satisfy Rule 56(d).

28         As such, for Taylor's spiff-overtime FLSA claim, summary judgment is **GRANTED**.

United States District Court
For the Northern District of California

### (2)   *Spiff-Overtime California Law Claim (Claim Three).*

The result, however, is different under California law.  This is because in addition to weekly overtime, California law provides overtime pay for work exceeding eight hours in any given day.  *See* Cal. Lab. Code 510(a).

Specifically, Section 510(a) requires that both daily and weekly overtime be compensated at one-and-a-half times the "regular rate of pay," a phrase for which "federal authorities still provide useful guidance in applying state law."  *Huntington Mem'l Hosp. v. Superior Court*, 131 Cal. App. 4th 893, 902–03 (2005).  To that end, California's Division of Labor Standards Enforcement has stated that when calculating the "regular rate of pay," "California will adhere to the standards adopted by the U.S. Department of Labor to the extent that those standards are consistent with California law."  Cal. Dept. Industrial Relations, DLSE, H. Thomas Cadell, Jr., advice letter, Calculation of Regular Rate of Pay (Jan. 29, 2003) ¶. 2, fn. 1, 3.  This means that under federal (and hence, California) authority, the "regular rate of pay" is still based on a single workweek.

Thus, the reasons why the result differs here are that California law allows for daily overtime, there is evidence that Taylor accrued daily overtime, and there is evidence that Taylor earned spiffs during those workweeks in which she accrued daily overtime.  This order now holds that the "regular rate of pay" — which federal authority defines as the total renumeration *in a workweek* divided by the total number of hours actually worked *in that workweek* — also applies to overtime work accrued under Section 510(a) — including work in excess of *eight hours a day*.  By way of illustration only, the following example shows how spiffs could factor into the regular-rate calculation for daily overtime pay:

> Total Compensation Earned in the Workweek:  $300.00 in regular wages, and $30.00 in spiffs.
>
> Total Hours Worked in the Workweek:  30 straight-time hours, including 1 hour of daily overtime.
>
> "Regular Rate of Pay":  $330.00 / 30 hours = $11.00 an hour.
>
> Daily Overtime Due:  1 daily overtime hour at 1.5 times the regular rate (*i.e.*, $11.00 an hour) = $16.50 total for the 1 hour of daily overtime.

**United States District Court**
For the Northern District of California

This order recognizes that the holding above disagrees with both sides' positions.  On this issue, the Court finds that both sides' presentations are riddled with confusion.  It would only confuse the reader to try and reiterate those positions here.  Suffice it to say that the "regular rate of pay" calculation to be used in this case will be based on a single workweek.  This order further acknowledges that there is no on-point authority addressing the "regular rate of pay" in the context of daily overtime under California law, but the holding herein flows from the language of Section 510(a) itself, as well as the DLSE's statement that it will adhere to federal law when calculating the "regular rate of pay."

Here, West Marine's records show that on at least five occasions, Taylor earned spiffs during a workweek in which she accrued daily overtime  (Simkins I Decl. ¶ 12; Exh. A).  A reasonable jury could therefore find that the company "miscomputed the overtime rate of pay for employees earning [s]piffs" if, for example, the company omitted spiffs when calculating the "regular rate of pay" for daily overtime hours (Third Amd. Compl. ¶ 39).

Thus, with respect to Taylor's spiff-overtime California law claim, West Marine's motion for summary judgment is **DENIED**.  Furthermore, Taylor herself has requested summary adjudication on her spiff-overtime California law claim, but this order finds that the record is insufficient to determine whether West Marine excluded spiffs from overtime calculations (*see* Simkins Exh. A).  Taylor's request for summary judgment is accordingly **DENIED**.

### C.    Claim Six — Inaccurate Wage Statements.

In Claim Six, Taylor contends that West Marine provided its employees inaccurate wage statements on all gross and net wages earned, due to the company's reported failure to pay proper wages for meal-and-rest breaks, off-the-clock work, and overtime work.  She also asserts that the wage statements were defective because they reportedly failed to specify employees' overtime rates of pay.  As a result, Claim Six requests "damages specified by section 226 of the [California] Labor Code, as well as attorney's fees and costs" (Third Amd. Compl. ¶¶ 49, 50).  Of relevance, Section 226(e)(1) states:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs

10

and one hundred dollars ($100) per employee for each violation
in a subsequent pay period, not to exceed an aggregate penalty of
four thousand dollars ($4,000), and is entitled to an award of
costs and reasonable attorney's fees.

West Marine argues that Claim Six is barred on statute-of-limitations grounds.  Both sides agree that under Section 226, there is a three-year statute of limitations for a damages claim, and a one-year statute of limitations for a penalties claim.  *See Sarkisov v. StoneMor Partners*, L.P., C 13-04834 WHA, 2014 WL 1340762, at *2 (N.D. Cal. Apr. 3, 2014).  Where the parties diverge is whether Claim Six seeks damages or penalties.  If it is the former, Taylor timely brought Claim Six because the three-year period has not yet passed since she left West Marine in March 2012.  If it is the latter, the applicable one-year statute of limitations has run.

This order now holds that Claim Six timely alleges damages.  In particular, this claim states that putative class members are "entitled to recover the *damages* specified by section 226," as a result of the inaccurate wage statements (Third Amd. Compl. ¶¶ 48–50) (emphasis added).  Indeed, "failure to provide complete and accurate itemized paystubs could have made the alleged under-reporting of wages more difficult to detect and confront," such that "[l]ost wages may thus be considered damages under Section 226."  *Sarkisov*, 2014 WL 1340762, at *2.

For the first time in its reply, however, West Marine challenges whether Taylor has an actual claim for damages.  According to the company, Taylor suffered no injury as she admitted to having "no trouble understanding her wage statements" (Reply 10).

This confuses the burden of production at the summary judgment stage.  For Claim Six, West Marine moves for summary judgment solely on the basis that the one-year statute of limitations has run for a penalties claim.  Indeed, the moving brief make no mention of the three-year statute of limitations for damages under Section 226, and make no factual challenge as to Claim Six.  Taylor then opposes on the ground that Claim Six alleges damages, not penalties, and West Marine replied by conceding that there is in fact a three-year statute of limitations for damages claims.  But as the moving party, it is West Marine who "always bears the initial responsibility" of demonstrating an absence of a genuine issue of material fact for the damages claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Moreover, "[e]xactly which items

are penalties and which are damages will be sorted out at trial, but at least some damages are alleged" in this action. *Sarkisov,* 2014 WL 1340762, at *2.

Summary judgment against Taylor's Claim Six is therefore **DENIED**.

### D. Claim Nine — PAGA Civil Penalties.

Finally, West Marine moves for summary judgment against Claim Nine, which seeks civil penalties under PAGA. Specifically, West Marine asserts — and Taylor agrees — that the PAGA claim is time-barred as to Taylor. In a footnote in her opposition, Taylor even concedes that only Fields has standing to bring the PAGA claim because Fields worked within a year of this action's commencement.

Summary judgment against Taylor's PAGA claim is thus **GRANTED**.

### 2. MOTION FOR CLASS CERTIFICATION.

This order now considers Taylor's motion for class certification. In brief, she seeks to appoint herself as class representative, and to appoint two law firms — Harris & Ruble, and Blecher, Collins, Pepperman & Joye, P.C., and— as co-lead class counsel. Taylor also moves to certify five California classes of hourly West Marine employees, detailed below.

Under Rule 23(a), the party seeking certification must show that the proposed class meets four prerequisites: numerosity, typicality, adequacy of representation, and commonality. The proposed class must also be ascertainable. In addition to satisfying Rule 23(a)'s prerequisites, the party seeking class certification "must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Here, Taylor seeks class certification only under Rule 23(b)(3), which further requires predominance and superiority.

### A. The Spiff-Miscalculation Class.

Taylor first proposes the following Spiff-Miscalculation Class (Br. 4) (emphasis added):

> **Spiff-Miscalculation Class —** All hourly-paid West Marine employees in California who were paid for overtime work *during a pay period in which they were compensated for a bonus, spiff, and/or contest pay*, at any time since the period of time commencing four years prior to the filing of the complaint to the date hereof.

United States District Court

For the Northern District of California

1   The above class would then bring Claims Three, Six, Seven, and Eight, which allege overtime

2   miscalculations based on spiffs, inaccurate wage statements, continuing wages, and unfair

3   business practices.

4       This order finds that the Spiff-Miscalculation Class proposed by Taylor goes beyond

5   what was alleged in the operative complaint.  Specifically, the proposed class now adds

6   "bonuses" and "contest pay," where such payments were not part of the overtime miscalculations

7   actually alleged in the complaint (*see* Third Amd. Compl. ¶¶ 18, 37–40).  Furthermore, in light

8   of the rulings above, only a more limited Spiff-Miscalculation Class may be certified as follows

9   (emphasis added):

10         **Spiff-Miscalculation Class** — All hourly-paid West Marine
      employees in California who were paid for *daily overtime work,*

11         *and who were compensated with a spiff during the workweek in*
      *which they accrued such daily overtime work*, at any time since

12         the period of time commencing four years prior to the filing of
      the complaint to the date hereof.

13            *(1)       Numerosity.*

14       Under Rule 23(a)(1), numerosity is satisfied by showing that "joinder of all members is

15   impracticable."  This prerequisite is not tied to any fixed numerical threshold, but is generally

16   satisfied "when a class includes at least forty members."  *Rannis v. Recchia*, 380 F. App'x 646,

17   650 (9th Cir. 2010).

18       Numerosity is demonstrated here.  There are at least sixteen employee declarations

19   submitted by West Marine, wherein the employees indicate that they are eligible to earn spiffs

20   and/or have earned spiffs, though it is unclear whether such spiffs were obtained during the class

21   period (*see, e.g.*, Barocio Decl. ¶ 49; Hayes Decl. ¶ 41).  For now, this is enough to certify the

22   Spiff-Miscalculation Class, but if it is later discovered that there are significantly fewer than

23   forty members therein, the undersigned judge may permit West Marine to move for

24   decertification of this class.

25            *(2)       Typicality and Adequacy.*

26       Typicality under Rule 23(a)(3) is shown when "the claims or defenses of the

27   representative parties are typical of the claims or defenses of the class."  During the class period,

28   Taylor earned daily overtime and spiffs in the same workweek, just as the putative members of

**United States District Court**
For the Northern District of California

1    the Spiff-Miscalculation Class would need to show.  Taylor now claims that the spiffs were

2    excluded from calculations of her daily overtime pay, which corresponds to the claim to be

3    brought on behalf of the Spiff-Miscalculation Class.  Typicality has thus been met.

4         Rule 23(a)(4) further requires that "the representative parties will fairly and adequately

5    protect the interests of the class."  This prerequisite has two parts:  (1) that the proposed

6    representative plaintiff and her counsel do not have any conflicts of interest with the proposed

7    class; and (2) that they will prosecute this action vigorously on behalf of the class.  *Hanlon v.*

8    *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

9         On this issue, West Marine attacks Taylor's credibility by alleging instances of her

10   drinking when working at the company, and by pointing to Taylor's two DUI citations (from

11   1980 and 1994) (Parisi Exh. S).  The company further alleges that Taylor lied at her deposition

12   by stating that she has never been arrested for a crime.

13        Not so.  As a preliminary matter, "[t]here is inadequacy *only* where the representative's

14   credibility is questioned on issues directly relevant to the litigation or there are confirmed

15   examples of dishonesty, such as a criminal conviction for fraud."  *Harris v. Vector Mktg. Corp.*,

16   753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (Judge Edward M. Chen) (emphasis added).

17   Neither Taylor's alleged drinking nor her dated DUI citations have any bearing on matters

18   directly relevant to this action.  Moreover, it appears that with the 1990 DUI citation, Taylor

19   entered a diversion program to receive alcohol education and treatment (Parisi Exh. S).  Finally,

20   the record does not show that Taylor lied under oath about her DUI citations.  In fact, she

21   testified that she "got a DUI a long, long time ago . . . [around] like 1979," but that she could not

22   recall any other crimes (Taylor Exh. 1 at 300:12–23).

23        This order further finds that both Taylor and her counsel Harris & Ruble are adequate.

24   With respect to the Spiff-Miscalculation Class, nothing in the record indicates that either Taylor

25   or her counsel would have a conflict with other potential class members.  Furthermore, both

26   Taylor and her counsel have vigorously prosecuted this action on behalf of the Spiff-

27   Miscalculation Class, and nothing in the record suggests that they will not continue to do so.

28

**United States District Court**
For the Northern District of California

### *(3)* *Commonality, Predominance, and Superiority.*

Taylor must also show "questions of law or fact common to the class" under Rule 23(a)(2). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. Here, this prerequisite is met because all putative members of the Spiff-Miscalculation Class face the common question of whether West Marine improperly omitted spiffs when calculating daily overtime.

In addition, Rule 23(b)(3) requires predominance — *i.e.*, common questions of law and fact will predominate over any questions affecting only an individual — as well as superiority — *i.e.*, a class action would be superior to other available methods for fairly and efficiently adjudicating the controversy. *See Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 964 (9th Cir. 2013).

Here, common questions will predominate. All putative members of the Spiff-Miscalculation Class will seek to determine whether spiffs were factored into the "regular rate of pay" used to calculate any daily overtime. In that connection, West Marine has the ability to generate two types of reports from its databases: (1) one report that would reflect the total number of hours worked by an employee on any given day; and (2) another report that would indicate when the employee earned a spiff and in what amount (*see, e.g.*, Simkins I Decl. ¶¶ 4, 6–9). Combined with other payroll data from the company, those two reports will provide a common method of identifying whether a class member earned daily overtime and a spiff in the same workweek, and whether a spiff was then included as part of the "regular rate of pay" for daily overtime calculations.

Furthermore, resolving claims of spiff-overtime miscalculations across a class will be far more efficient than resolving such claims in individual, separate lawsuits. This is especially true given the allegedly nominal differences that the spiffs would make when properly factored into the daily overtime calculation. Absent a class action, some putative members likely would not pursue litigation, if faced with such small amounts of potential recovery. A class action is thus superior to other methods for adjudicating this dispute.

1   Nevertheless, West Marine contends that there is no predominance because of individual

2   issues with spiffs.  To that end, the company points to differences in how much was paid for

3   each spiff, in what form (*e.g.*, cash or gift card), and whether the company or a third-party

4   vendor paid a spiff to an employee.  West Marine further asserts that "many" spiffs were

5   discretionary, such that they would not count as "wages" for overtime calculation purposes, and

6   that a "commissioned employee exemption" may cover some employees, in which case

7   California's overtime provisions would not apply at all (Opp. 24).

8   This order is unpersuaded.  While there likely are variations with the amount, form, and

9   source of spiffs, the company's senior payroll manager was still able to identify records on all

10   spiffs earned by plaintiffs for a given time period (Simkins I Decl. ¶¶ 12–13).  That manager also

11   declared that spiffs were bonuses that certain employees could earn when they sell a particular

12   product, not that the spiffs were somehow discretionary on account of the company (*id.* ¶ 8).

13   Furthermore, as to the "commissioned employee exemption" raised by West Marine, its senior

14   payroll manager was also able to identify two employees who could fall under that exemption

15   (Simkins II Decl. ¶ 7).  This shows that the company has the ability to determine which

16   employees are part of the Spiff-Miscalculation Class and which employees are not, even if "there

17   is no easy way" to do so (*ibid.*).

18   *(4)    Ascertainability.*

19   In addition to the explicit requirements of Rule 23, there is an implied prerequisite that

20   the class be sufficiently definite.  *Vallabhapurapu v. Burger King Corp.*, C 11-00667 WHA,

21   2012 WL 2568183, *5 (N.D. Cal. July 2, 2012).  Here, putative members of the Spiff-

22   Miscalculation Class are identifiable based on knowable and objective factors, including their

23   dates of employment, their identification numbers, and other work data found in the company's

24   own records.  As such, this order finds that the Spiff-Miscalculation Class is sufficiently

25   ascertainable.

26   The request to certify the Spiff-Miscalculation Class is thus **GRANTED**.

27

28

16

**United States District Court**
For the Northern District of California

**B.     Wage Statement Class and Former Employee Class.**

The next two classes proposed by Taylor are the Wage Statement Class and the Former Employee Class.  This order now holds that only the following may be certified for these two classes:

> **Wage Statement Class** — All hourly-paid West Marine employees in California, who were issued wage statements and were members of the Spiff-Miscalculation Class during the period of time commencing three years prior to the filing of the complaint to the date hereof.

> **Former Employee Class** — All former hourly-paid West Marine employees in California who are members of the Spiff-Miscalculation Class.

Because these two classes are derivative of the Spiff-Miscalculation Class, the request to certify the Wage Statement Class and the Former Employee Class is also **GRANTED**.  This, however, is only to the extent that the Wage Statement Class and the Former Employee Class are based on the claims of the Spiff-Miscalculation Class, nothing more.

**C.     Rest-and-Meal-Break Classes.**

Taylor also proposes the Rest-Break Class and the Meal-Break Class, described below:

> **Rest-Break Class** — All hourly-paid West Marine employees in California who were scheduled to work for more than six hours but fewer than eight hours on any given day, and who worked more than six hours but fewer than eight hours during that day, on any day since the period of time commencing four years prior to the filing of the complaint to the date hereof.

> **Meal-Break Class** — All hourly-paid West Marine employees in California who on any given day since the period of time commencing four years prior to the filing of the complaint to the date hereof were scheduled to work, and actually did work, for more than five hours and who did not record a meal break (of at least thirty minutes) which commenced during the initial five hours of their work.

Both of these classes would bring Claims One, Six, Seven, and Eight, alleging rest-and-meal break violations, inaccurate wage statements, continuing wages, and unfair business practices.

*(1)     Predominance.*

The rest-and-meal-break classes share the same fatal defect:  no common method of proving liability.  At the evidentiary hearing, and with respect to the second rest break, Taylor presented an idiosyncratic account of how she worked more than six hours and did not take a

17

United States District Court

For the Northern District of California

1   second rest break "at least once a week" during her employment.  According to Taylor, she

2   missed the second rest break on those occasions because the store was too busy and her manager

3   (Pfarr) told her to wait on taking that break.  The store then continued to be too busy, such that

4   there was no later opportunity to take the second rest break on those occasions  (Dkt. No. 109 at

5   9:3–10:20).

6          Even assuming that happened, this does not show what occurred at West Marine's other

7   stores in California, or whether other employees also missed their second rest break because of

8   how busy their stores were.  Indeed, there are no records to even indicate when rest breaks were

9   or were not taken, as admitted by Taylor herself (Kemple Exh. A at 195:11–15).  Moreover, six

10  employees have declared that they worked shifts of six to eight hours, and that they knew they

11  were entitled to take a second rest break (Campbell Decl. ¶¶ 17–18; Esplin Decl. ¶ 16; Krieger

12  Decl. ¶ 18; Perez Decl. ¶ 23; Schulyer Decl. ¶ 16; Screen Decl. ¶ 22).  At least three employees

13  further declare that they did not take a rest break because of personal reasons, or that

14  "sometimes," they chose to forego some or all of a rest break because they would "rather get

15  back to work" (*see, e.g.*, Cameron Decl. ¶ 18; Esplin Decl. ¶ 17; Gomez Decl. ¶ 17).  There is

16  thus no way of determining liability for the second rest break without being overwhelmed by

17  individual stories.

18         The same is true with the meal breaks.  Although meal breaks are supposed to be

19  recorded by having employees punch in and out of the clock, the company has submitted six

20  declarations from employees who state that they sometimes voluntarily decided to forego a meal

21  break, or that sometimes, they would forget to record a meal break even though they had taken

22  the meal break anyway (*see* Cole Decl. ¶ 15; Gomez Decl. ¶ 24; Horne Decl. ¶ 18; Perez Decl. ¶

23  31; Screen Decl. ¶ 30; Torres Decl. ¶ 12).  The company also submits twenty declarations from

24  employees who state that they have never been instructed, coerced, or pressured to miss a meal

25  break or return to work before a meal break was over (*see, e.g.*, Barocio Decl. ¶ 28).  Indeed,

26  Taylor herself testified that she punched out and actually took a meal break "at least 95, if not a

27  hundred" percent of the time that she worked over five hours (Kemple Exh. A at 297:9–298:2).

28  Such declarations thus show that there will be individualized inquiries, employee-by-employee,

as to whether a waiver of a meal break was truly voluntary, whether an employee forgot to record the break but took the meal break anyway, or whether there was some reason other than coercion that caused the employee to miss a meal break.  It is also worth noting that Taylor, in contrast, has submitted no declarations from other employees.

To this, Taylor's counsel argue that there is a class-wide method of proof based on West Marine's generic, company-wide policies.  According to those policies — which are found in the company's Associate Handbook and other materials — employees were instructed to take a second rest break only after eight hours, and meal breaks only after six hours.  In other words, the policies present a common method of showing across the company's California stores that the eight-hour benchmark (for a second rest break) and the six-hour benchmark (for a meal break) violated California law, or so Taylor's counsel believe.

The Court has carefully considered those policies, but the problem is that they were generic, common documents that were later superseded by California-compliant policies.  To that end, Pfarr has declared that when she trained Taylor upon hiring, she "set-up [Taylor's] access to West Marine's intranet site, Homeport; instructed [Taylor] as to the purpose of Homeport and how to use it; personally showed [Taylor] California specific policies that were located on Homeport, including the California specific meal and rest break policies; and verbally reviewed and explained West Marine's California specific policies, including those policies that related to meal and rest breaks" (Pfarr Decl. ¶ 4).  Of course, it is conceivable that one side or another is not being truthful concerning a California-specific policy.  Nonetheless, the evidence would have to be evaluated on a store-by-store basis, in just the same way that Pfarr laid out the evidence in dealing with Taylor.  So the analysis still comes down to the issue of predominance, or the lack thereof in this case, regarding the extent to which employees in West Marine's California stores were provided proper rest and meal breaks.

Absent a satisfactory showing of predominance, the request to certify the rest-and-meal-break classes is **DENIED**.

United States District Court
For the Northern District of California

**D.   Evidentiary Objections.**

Taylor seeks to exclude West Marine's twenty employee declarations because the company reportedly did not disclose those employees until after Taylor had filed her motion for class certification.

This order disagrees.  The employees were listed in West Marine's supplemental disclosures only four days after the class-certification motion, and Taylor could have deposed those employees or at least requested an extension of deadlines to conduct those depositions.  So far as the record shows, she did neither.  As a result, Taylor's request to bar those employee declarations is **DENIED**.

In addition, both sides have submitted a string of evidentiary objections to each other's declarations on class certification.  West Marine also requests judicial notice of deposition testimony given by Taylor's expert in an unrelated action.  Because the other declarations and deposition testimony are not determinative on the class-certification motion, all evidentiary objections and the request for judicial notice are **DENIED AS MOOT**.

## CONCLUSION

To the extent stated, the motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART**.  The motion for class certification is also **GRANTED IN PART AND DENIED IN PART**.  Only the Spiff-Miscalculation Class, the Wage Statement Class, and the Former Employee Class, as defined below, shall be certified pursuant to Rule 23(b)(3):

> **Spiff-Miscalculation Class** — All hourly-paid West Marine employees in California who were paid for daily overtime work, and who were compensated with a spiff during the workweek in which they accrued such daily overtime work, at any time since the period of time commencing four years prior to the filing of the complaint to the date hereof.

> **Wage Statement Class** — All hourly-paid West Marine employees in California, who were issued wage statements and were members of the Spiff-Miscalculation Class during the period of time commencing three years prior to the filing of the complaint to the date hereof.

> **Former Employee Class** — All former hourly-paid West Marine employees in California who are members of the Spiff-Miscalculation Class.

Plaintiff Karen Taylor is hereby **APPOINTED** as class representative of the three classes certified herein.  Pursuant to Rule 23(g), the law firm of Harris & Ruble is **APPOINTED** as lead class counsel.  It is thus unnecessary and duplicative to also appoint Blecher, Collins, Pepperman & Joye, P.C. as co-class counsel.  Moreover, all evidentiary objections and the request for judicial notice are **DENIED AS MOOT**.

Counsel must remember that any class settlement must be limited to the issues certified for class treatment and may not release claims of absent class members not certified. Furthermore, all counsel shall propose an agreed-upon form of class notice and a joint proposal for dissemination of notice by **SEPTEMBER 29, 2014**.  Plaintiffs' counsel shall bear the cost of the class notice to be given by first-class mail.

**IT IS SO ORDERED.**

Dated:  September 19, 2014.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE