IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN TAYLOR, individually and on behalf of all others similarly situated, and PAULISA FIELDS,<br><br>Plaintiffs,<br><br>v.<br><br>WEST MARINE PRODUCTS, INC.,<br><br>Defendant. | No. C 13-04916 WHA<br><br>**ORDER RE PRELIMINARY APPROVAL OF CLASS SETTLEMENT** |

## INTRODUCTION

The joint motion to preliminarily approve a proposed class settlement is **DENIED**. The case schedule remains as stated in the amended case management order dated November 25, 2014 (Dkt. No. 145). This denial is without prejudice to further attempts to settle this case, but we will not delay our case schedule again to accommodate further settlement efforts.

## STATEMENT

The background of this action is set forth in prior orders (*see* Dkt. No. 113). In brief, defendant West Marine Products, Inc. is a national boating-supply retailer. Plaintiffs Karen Taylor and Paulisa Fields are two former hourly employees who worked for West Marine at its Santa Barbara facilities — from May 2011 to March 2012, and February 2012 to June 2013, respectively.

Plaintiffs asserted several claims relating to defendant's alleged failure to provide sufficient rest and meal breaks, failing to pay overtime wages, and providing employees with

inaccurate wage statements. On September 19, 2014, the Court granted in part defendant's motion for partial summary judgment and certified three classes relating to the miscalculation of overtime pay. The first class consisted of hourly-paid West Marine workers who were paid for daily overtime work and compensated with a spiff in the same week during the four years prior to the filing of the complaint. The other two certified classes — the wage statement class and the former employee class — are derivative of the first class.

Under the settlement, all claims relating to a failure to include spiff awards in the calculation of overtime pay (not just daily overtime pay) of putative class members would be completely extinguished and replaced by an unclear claims procedure. Of the $435,000 proposed settlement, class counsel requests $160,500 in attorney's fees and expenses. In addition to their own shares of the settlement, $10,000 total would be paid to the two named plaintiffs as "incentive payments." Costs of administration in the amount of $15,000 would also be deducted.

**ANALYSIS**

Class actions are ideally suited to the efficient resolution of numerous parallel claims in a single proceeding and encourage the pooling of small claims against a common target. They are an engine of justice in our federal courts. But they can also lend themselves to abuse. One form of abuse is collusive settlement. Once the named parties reach a settlement in a purported class action, they are always solidly in favor of their own proposal. There is no advocate to critique the proposal on behalf of absent class members. That is one reason that Rule 23(e) insists that the district court vet all class settlements. While always giving deference to counsel's views of the advisability of a settlement, a district court may not simply rubber stamp stipulated settlements. We must be careful to make sure absent class members will be treated fairly. *See* Howard Erichson, *Beware the Settlement Class Action*, DAILY JOURNAL, Nov. 24, 2014.

As the Court reads it, there are three main problems with the proposed settlement: (1) the scope of the release is too broad; (2) the proposed incentive payments for named plaintiffs

are unwarranted; and (3) the proposed claims procedure is incomprehensible from the settlement agreement and the parties' brief.

### 1. SCOPE OF THE PROPOSED RELEASE.

The settlement agreement proposes to release any and all claims:

> arising from any failure by defendant to include spiff awards in the calculation of the regular rate of pay for purposes of paying overtime compensation, including derivative claims for inaccurate wage statements and California Labor Code Private Attorney General Act penalties for any pay period in which a spiff was earned by a Participating Class Member, as well as waiting time penalties. No FLSA claims are released by this Settlement Agreement.

(Harris Exh. 1 at ¶ I. S.). The scope of this release is broader than the class definition this Court certified in September. The primary class consisted of:

> Spiff-Miscalculation Class — All hourly-paid West Marine employees in California who were paid for *daily* overtime work, and who were compensated with a spiff during the workweek in which they accrued such daily overtime work, at any time since the period of time commencing four years prior to the filing of the complaint to the date hereof.

(Dkt. No. 113 at 20). The differences between the scope of the released claims and the scope of the certified class cannot be ignored. While the parties' joint motion states that the settlement agreement will cover class-wide claims arising from irregularities in the calculation of daily overtime pay, the settlement agreement itself says otherwise.

The proposed settlement would release all putative class members' claims relating to defendant's failure to include spiff awards in the calculation of *any* overtime pay. The certified class only includes employees who were paid for *daily* overtime work. In fact, this distinction was litigated at the summary judgment stage. This Court dismissed named plaintiff Taylor's FLSA claim because she failed to allege that she earned a spiff during any overtime workweek.

This distinction between daily and weekly overtime pay would not matter to Taylor. She did not earn any spiffs during overtime workweeks. It could, however, matter to other absent class members. Plaintiffs allege that there are 707 members of the spiff-miscalculation class who were paid for daily overtime work and compensated with spiffs. Some of these absent class members, unlike Taylor, may have earned a spiff during a week in which they worked more than forty hours, and thus earned weekly overtime pay rather than just daily

overtime pay. While the certified class only consists of those paid for daily overtime work, and the damage calculations contained in the Boedeker expert report only included "weeks in which no weekly overtime is worked, but during which there is daily overtime," absent class members would be releasing claims relating to both daily and weekly overtime claims (Boedeker Decl. at ¶4). This is too broad of a release.

### 2. INCENTIVE PAYMENTS.

So-called "incentive payments" are a recent invention by those who handle class actions. Class actions did much justice without them for decades. While there is a theoretical rational for incentive payments, there is also a major downside. The downside is that the payments lend themselves for use as side payments to induce named plaintiffs to go along with sweetheart deals. Ordinarily, named plaintiffs ought to receive no more or less than the absent class members they purport to represent. In this way, they are incentivized, out of self interest, to achieve the best possible result for the class.

The parties claim that the two named plaintiffs deserve a $10,000 bonus ($5,000 each) because they expended time conferring with class counsel, submitted to depositions, attended the Court's summary judgment hearing, and attended the settlement conference with Magistrate Spero. These duties were foreseeable consequences of taking on the job of being class representatives. Fields was not appointed as a class representative and no bonus should be taken from the class for her. The Court finds that this record does not justify the proposed extra payments and that an incentive payment of $500 for Taylor is the most that would be approved.

### 3. INCOMPREHENSIBILITY OF THE PROPOSED CLAIMS PROCESS.

The parties' joint motion describes a non-reversionary "claim-submission process" in which class members will have forty-five days to submit claim forms or exclusion requests (Br. 11–12, 14). Neither the motion, nor class counsel's declaration, clarifies what this claim-submission process consists of.

On the other hand, the proposed notice to be sent to the class members clearly states that if they do nothing, they will receive a payment and release the claims set forth in the notice. This proposed notice does not mention any sort of claim-submission process. It only gives class

4

members the option to do nothing and receive a payment, opt out of the settlement, or object to the settlement (Harris Exh. 1, Exh. A).

This inconsistency must be cleared up. If class members can simply do nothing and receive a payment in the mail, then that must be consistent throughout all of the parties' documents. If there is some form of claim-submission process, however, that must be clarified in the proposed notice to class members and in the settlement agreement itself. Moreover, the Court questions why there would be any need for a claims procedure. The amount due can surely be determined from defendant's records.

## CONCLUSION

The Court understands the parties' assertion that once the above cited issues are remedied, participating class members will be made whole, or even more than whole, by the proposed settlement. Defense expert Boekeker concluded that of the 707 class members, 33% were underpaid by just one dollar or less, 55% were underpaid by five dollars or less, and 88% were underpaid by $50 or less. Despite this, each class member would receive at least $216 under the settlement agreement, could receive up to $1,111, and will receive substantially in excess of the maximum potential overtime damage under any methodology for calculating the overtime rate.

For the reasons stated above, however, the parties' joint motion for preliminary approval of the class settlement is **DENIED**. The January 8, 2015, hearing date is hereby **VACATED**. If the parties address the foregoing concerns, the Court will consider preliminary approving an amended settlement agreement. By its silence, this order does not approve the large sum sought for fees and expenses. That will be decided later.

**IT IS SO ORDERED.**

Dated: December 29, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5